**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

JOSHUA BARRETT SHAPIRO,
                    Plaintiff

           v.                                    C.A. No. 011-140-ML

ROGER WILLIAMS UNIVERSITY, et al.,
                    Defendants

**MEMORANDUM AND ORDER**

     The plaintiff in this case, Joshua Barrett Shapiro
("Shapiro"), has brought claims of (1) breach of contract, (2)
breach of the covenant of good faith and fair dealing, (3) fraud,
(4) deceit, (5) negligent misrepresentation, and for (6) punitive
damages against Roger Williams University ("RWU" or the
"University"), where Shapiro was a student from the 1999 summer
term until his suspension on October 10, 2001. This Court has
dismissed Shapiro's claims against several former and current RWU
employees in their individual capacity because Shapiro's
allegations that these individuals acted in their personal
capacities were found to be entirely unsupported. Shapiro v. Roger
Williams University, C.A. No. 011-140-ML, 2012 WL 1565282 (D.R.I.
April 30, 2012). The matter is before the Court now on four
separate motions by RWU seeking sanctions and/or dismissal of the
case for Shapiro's failure to appear at his own deposition,
disobedience with respect to various Court orders, and for other
alleged misconduct by Shapiro.

1

## I. Factual Background and Procedural History

The events leading to this litigation, the extensive discovery activity, and the inordinately convoluted motion practice between the parties has been set forth in great detail in this Court's April 30, 2012 Memorandum and Order, see Shapiro v. Roger Williams University, C.A. No. 011-140-ML, 2012 WL 1565282 (D.R.I. April 30, 2012), as well as the many orders of Magistrate Judge Martin. For ease of reading, the Court sets forth a summary of the facts and procedural history of this action.

On October 10, 2001, following a University disciplinary meeting, an administrative hearing, and a judicial review by an RWU Hearing Officer, Shapiro was suspended from RWU for several violations of RWU's conduct code. Shapiro, who had pled "in violation" to some of the charges but had disputed others, was given the option of returning to the University during the 2002 summer term, provided he complied with certain conditions set by RWU. Shapiro's appeal of his suspension was denied and he never sought re-admittance to RWU.

Nearly ten years later, Shapiro filed a complaint (the "Complaint") against RWU and several former and current University employees, charging, *inter alia*, that he was "expelled"[1] from RWU

_____

[1]

Throughout this litigation, Shapiro has maintained that he was "expelled" from the University, whereas RWU takes the position that Shapiro was "suspended."

without proper notice or hearing.  Shapiro sought damages in the amount of $2.5 million and various forms of injunctive relief. Shapiro also alleged that the University employees named in his suit acted personally and, in essence, conspired to expel him from RWU, a contention which this Court rejected as entirely unsupported.  The Court dismissed all claims asserted against the defendants in their individual capacity. (Docket # 77).

The parties then engaged in discovery, in the course of which Shapiro filed nearly two dozen motions, including, *inter alia*, a request to have the Court execute personal service on one of the individual defendants now residing in Vietnam (Docket # 17), and a request to unseal documents which RWU had filed under seal because they were part of Shapiro's confidential student file. (Docket # 55).

In November 2011, when RWU requested Shapiro's answers to interrogatories, it erroneously submitted 30 interrogatories instead of the 25 allowed by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 33(a)(1).  After Shapiro objected, RWU struck five of the interrogatories; nevertheless, Shapiro refused to answer any of them. RWU's amended motion to compel (Docket # 82) was granted, subject to imposition of a confidentiality requirement (Docket # 104); however, to date Shapiro has not provided responses as ordered.

Likewise, Shapiro was ordered to provide certain documents

related, *inter alia*,  to the damages he alleged in this litigation,
see June 7, 2012 Order (Docket # 114). Shapiro has not provided the
requested documents as ordered.

Discovery was also impeded throughout because Shapiro
identified himself as a California resident and insisted that all
documents in this litigation be sent to the California address of
his father's law firm. In addition, Shapiro provided only the law
firm's telephone number as his contact information. As disclosed by
Shapiro's father at his deposition, Shapiro actually resides in
Virginia and any mail or telephone messages received in California
must be separately forwarded to Shapiro.

On May 22, 2012, Shapiro failed to appear at a hearing on his
Motion for Protective Order (Docket # 80). In a motion seeking to
reschedule the hearing - which arrived at the Court after the
hearing had been conducted - Shapiro alleged that he had received
notice of the hearing only four days prior.  (Docket # 96).  The
hearing was rescheduled for June 6, 2012 and the parties were
permitted to attend that hearing via telephone (Docket # 99).  The
Magistrate Judge assigned to this case also ordered Shapiro to
confirm his address and contact telephone number in writing to the
Clerk and to provide RWU with a copy of that confirmation. May 22,
2012 Order at 2 (Docket # 98).  Notwithstanding the information
provided by his father regarding Shapiro's residency in Virginia,
Shapiro continues to insist on using the contact information for

4

his father's law firm as his own.

A hearing on four of Shapiro's motions and on one motion filed by RWU was scheduled for June 6, 2012.  Shapiro's deposition was scheduled for June 1, 2012, of which he was notified by first class mail sent to the California address.  On May 29, 2012, three days before his scheduled deposition, Shapiro filed an "Emergency" Motion for Protective Order (Docket # 106), seeking to have the deposition conducted either in California or by electronic means.  Shapiro contended that having to travel to Rhode Island "would cause an undue burden and expense due to the cost . . . to travel and stay for perhaps multiple days of deposition." [2] Emergency Motion at 1.  Shapiro argued that "[h]aving committed to pursuing this action, the defendants' [sic] cannot now complain of the relatively minor cost of funding their attorney's travel from Rhode Island to California to take the Plaintiff's deposition." Id. at 6.  Shapiro pointed out that he had traveled to Rhode Island twice for this litigation. He also stated that "but for finding a surprisingly affordable rate for the parties [sic] June 06, 2012 hearing, he would not have been able to afford to attend this hearing." Id. at 7. At a telephonic hearing on Shapiro's "Emergency" Motion on May 31, 2012, Shapiro disclosed, for the

---

[2]

The Federal Rules of Civil Procedure, in which Shapiro appears to be well-versed, provide that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1).

first time, that he had canceled the airline ticket he had purchased for the June 6, 2012 hearing after obtaining permission to attend that hearing by telephone.

Because Shapiro's "Emergency" Motion had been filed only shortly before his scheduled deposition, the Magistrate Judge found that requiring Shapiro to attend his deposition on June 1, 2012 would be impossible.  Therefore, the Magistrate Judge offered Shapiro the opportunity to select a date for his deposition during the week of June 18, 2012.  Shapiro, however, refused to select a date. RWU, on its part, stated that Shapiro's deposition would not exceed seven hours and would likely take only two to three hours. The Magistrate Judge then set the date for the deposition for June 21, 2012 in Rhode Island. (Docket # 108).  The Magistrate Judge also advised Shapiro that, if he failed to appear for his deposition, he would be subject to sanctions, including dismissal. June 1, 2012 Order (Docket # 108). Because Shapiro insisted that his father's law firm address was the only option to contact him, he was also advised to be in daily contact with the law firm in order to keep up-to-date with any developments in the case.

On June 12, 2012, Shapiro filed an appeal (Docket # 119) of the Order (Docket # 108) scheduling his deposition on June 21, 2012. Essentially, Shapiro reiterated that traveling to Rhode Island from California constituted a financial hardship for him which outweighed the costs to RWU of having its counsel travel to

California. Shapiro also suggested that "Defendants implicitly represented that they had the ability to fund the litigation, either through the aggregation of their own resources or on the basis that defendants' counsel would advance the costs of the lawsuit." Appeal Mem. at 11 (Docket # 119).  Shapiro's appeal was still pending when he failed to appear for his deposition on June 21, 2012. Shapiro did not file a motion to stay or a motion for a protective order with respect to his scheduled deposition.

On June 20, 2012, Shapiro filed a Petition for Writ of Mandamus in the United States Court of Appeals for the First Circuit, seeking to set aside various filings of the defendants (and several orders issued by this Court) on the basis that they were not properly served on Shapiro. In re: Joshua Barrett Shapiro, No. 12-1775.  Shapiro suggested, *inter alia*, that notification of service by electronic means was not permitted unless the recipient consented in writing. Shapiro Brief at 10-11. Although Shapiro had been granted *pro se* status and waiver of all PACER fees, Shapiro also insisted that RWU's motions should have been served on him by conventional means as well, specifically via regular mail to the California address. Id. at 11-12. After Shapiro's petition for a writ of mandamus was denied on July 9, 2012, he filed a petition for a rehearing en banc on July 25, 2012.  On August 2, 2012, the petition was denied as well. In re: Joshua Barrett Shapiro, No. 12-1775 (1st Cir. Aug. 2, 2012).

7

In the interim, RWU filed two motions (Docket # 112, # 126), in which they sought the imposition of sanctions, including dismissal, for Shapiro's conduct during the litigation. Following Shapiro's failure to attend his deposition on June 21, 2012, RWU filed a motion to dismiss the complaint, seeking entry of final judgment (Docket # 127). RWU filed a fourth motion (Docket # 132) after Shapiro failed to produce documents as required by Court order issued June 7, 2012 (Docket #114).

Since the May 31, 2012 hearing, Shapiro has filed a motion for leave to file a second amended complaint (Docket # 124), a motion *in limine* to exclude testimony or evidence regarding his financial records (Docket # 140), a motion for reconsideration (Docket # 141) regarding certain documents that were returned to Shapiro because they contained personal identifiers, see Order (Docket # 129), and a motion to compel discovery and for sanctions (Docket # 142).

**II.  RWU's Motions**

1. Motion for Imposition of Sanctions (Docket # 112)

RWU seeks sanctions against Shapiro pursuant to Fed. R. Civ. P. 37(d)(1)(A)(ii)[3].   In its motion, RWU generally refers to

---

[3]

That subsection of Rule 37  provides:

(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.

(1) In General.

(A) Motion; Grounds for Sanctions. The court where the action is

various obstacles it has faced in communicating with the plaintiff and moving the litigation forward in an expeditious manner:

(A) RWU contends that Shapiro has refused to provide an e-mail address to the Court on the ground that he did not use one, notwithstanding the fact he had been exchanging e-mails with RWU's counsel for months and up to the date of this motion. Shapiro also identified his e-mail in connection with a motion by which he sought to vacate a number of Court orders on the ground that he had not received them or had only been given notice of RWU's motions by e-mail.

(B) In addition, Shapiro consistently represented the California address and telephone number of his father's law office as his own, insisting that all documents were to be sent to him at that address. According to RWU, Shapiro is, and has been, residing in Virginia Beach, Virginia. Mitchell Shapiro, his father, described at his deposition how all mail related to this litigation was received at his office and then forwarded to Shapiro's Virginia address. Similarly, RWU's counsel was compelled to call Mitchell Shapiro's office repeatedly in order to have messages delivered to

---

pending may, on motion, order sanctions if:

***

(ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

Shapiro by phone call or e-mail.

(C) In appealing the Court's ruling on RWU's motion for a protective order, Shapiro asserted that RWU's counsel never conferred with him prior to filing its motion. According to RWU, Shapiro sought to discover certain documents which identified other students who had complained about his conduct at the University. Following a Rule 16 conference and a mediation session at this Court on September 26, 2011, Shapiro suggested that, if RWU agreed not to call those students at trial, he would consider foregoing those documents. RWU's counsel rejected the suggestion and advised Shapiro that a motion for protective order would be filed. The motion for protective order was filed on October 20, 2011, (Docket # 27), well after those discussions had taken place.

(D) At the beginning of this litigation, Shapiro was granted leave to proceed *in forma pauperis* and he also received an exemption from PACER fees, which enabled him to access the Court's docket from any computer, e.g., at a public library, without incurring any costs. Nevertheless, Shapiro has repeatedly asserted that he did not receive the Court's standard pretrial order, and he has offered this alleged omission as a basis for seeking relief from the Court. See e.g. Shapiro's Motion for Enlargement of Time to Provide Expert Disclosures and Modification of Scheduling Order (Docket # 54)(asserting that he was unaware of the scheduling order until he contacted the clerk's office three weeks before filing the

motion), and Shapiro's Motion for *In Camera* Review (Docket # 93) (contending that he inadvertently mailed confidential documents to his expert because he never received the Standard Pretrial Order).

(E) In addition, (1) RWU points to Shapiro's refusal to provide answers to interrogatories; (2) RWU alleges that Shapiro's appeal from the Magistrate Judge's order denying Shapiro's motion for a protective order was frivolous; and (3) Shapiro failed to appear at the May 22, 2012 Hearing on Shapiro's motion for a protective order.[4]

Shapiro's response to RWU's Motion for Imposition of Sanctions was due on June 22, 2012[5]; no objection thereto has been filed to date.

2. Motion for Entry of Final Judgment (Docket # 126)

This motion is brought pursuant to Fed. R. Civ. P. 37 (b)(2)(A)(v) and (vi)[6]. RWU seeks dismissal of the Complaint

---

[4]

On that occasion, Shapiro had been notified of the hearing by first class mail sent to the California address he had provided to the Court.  Shapiro's motion to set aside the notice of hearing and to reschedule the hearing was not received until after the hearing had concluded. (Docket # 96).

[5]

The date on which responses to a filing are due is noted on the case docket; as previously noted, Shapiro had free access to the docket after PACER fees were waived at the beginning of this litigation.

[6]

Subsection (b) of Rule 37 provides:

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under

because Shapiro failed to provide answers to RWU's interrogatories as directed in a May 24, 2012 Order Granting Amended Motion to Compel and Imposing Confidentiality Requirement. (Docket #104). That particular order compelled Shapiro to provide answers to RWU's interrogatories within 21 days of its filing, while setting strict conditions for RWU's disclosure of Shapiro's social security number to a third party in connection with this litigation.  The order makes reference to Shapiro's "wholesale opposition to providing any information," notwithstanding his serious claims against RWU and his demand for $2.5 million in damages.  Order at 1 n.1.

Shapiro's response to this motion was due July 9, 2012; no objection thereto has been filed to date.

3. Motion to Dismiss and for Entry of Final Judgment (Docket # 127)

RWU seeks to dismiss the Complaint on the ground that Shapiro was ordered by this Court to appear in Rhode Island for his deposition at 10:00 a.m. on Thursday, June 21, 2012, see Order Granting in Part Emergency Motion and Re-Scheduling Plaintiff's Deposition issued by Magistrate Judge Martin on June 1, 2012

---

Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
***
(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party;

(Docket # 108), but that Shapiro failed to appear.[7]   The Order states that notice of the deposition was mailed to Shapiro on May 9, 2012 and that, only three days before the scheduled date, Shapiro sought a protective order by "Emergency" motion excusing him from appearing for his deposition or to be deposed in California or by electronic means. In his motion for protective order, Shapiro argued that having to travel from California to Rhode Island would cause an undue burden and expense. The Magistrate Judge rejected this contention, noting that Shapiro had bought an airline ticket to attend a June 6, 2012 hearing before this Court but that, after obtaining permission on May 23, 2012 to attend the June 6, 2012 hearing by telephone, Shapiro had simply canceled his ticket, knowing that RWU desired to depose him in person, and knowing that he would seek an excusal from appearing at his June 1, 2012 deposition.

The Magistrate Judge also rejected Shapiro's representation that he believed his deposition would cause him to incur extra expense by requiring him to spend several days in Rhode Island. The Magistrate Judge referred to Shapiro's familiarity with the Federal Rules of Civil Procedure, which limits depositions to 1 day of 7 hours, see Fed. R. Civ. P. 30(b), and noted that, by simply

---

[7]

Pursuant to Fed. R. Civ. P. 37(d)(1)(A)(i), a party who "fails, after being served with proper notice, to appear for that person's deposition," is subject to sanctions, including dismissal.

requesting that his deposition stay within those perimeters, Shapiro could have limited his expenses while accommodating RWU's request for a personal deposition. As pointed out by the Magistrate Judge, Shapiro had twice before traveled to hearings before this Court and had already purchased a ticket for a third hearing - which he then voluntarily canceled - casting some doubt on his claims of financial hardship.

Moreover, because Shapiro filed his "Emergency" Motion only three days before the scheduled deposition date, a telephonic hearing on his motion could not be scheduled until May 31, 2012, making it too late for Shapiro to travel to the scheduled June 1, 2012 deposition. The deposition was re-scheduled for June 21, 2012 and Shapiro was ordered to appear for his deposition. He was also advised that if he failed to appear for the deposition, he was "subject to being sanctioned and that the sanction could include dismissal of this action." Order (Docket #108) at 6 n.6.

Shapiro's response to this motion was due July 9, 2012; no objection thereto has been filed to date.

4. Motion for Entry of Final Judgment (Docket # 132).

RWU seeks entry of final judgment pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) and (vi). RWU states that Shapiro was compelled by order of this Court to produce documents in response to RWU's first supplemental request for production of documents, but that Shapiro failed to comply with such order. In support, RWU presents the

Order Granting Motion to Compel Production (Docket #114) issued by the Magistrate Judge on June 7, 2012, which granted four initial and one supplemental request by RWU for discovery documents.

Shapiro's response to this motion was due July 16, 2012; no objection thereto has been filed to date.

### III. Standard of Review

Failure by a party to make disclosures or to cooperate in discovery is governed by Rule 37 of the Federal Rules of Procedure. Sanctions for failure to comply with a Court Order include dismissal of the action in whole or in part and/or rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(v) and (vi). In addition, Rule 41 of the Federal Rules of Civil Procedure provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). A dismissal pursuant to subsection 41(b), unless specified otherwise by the Court, "operates as an adjudication on the merits." Id.

Rule 37 provides a variety of sanctions for failure to obey a discovery order, including dismissal. A default judgment against a party may be rendered when the party has failed to obey a court order, see Fed. R. Civ. P. 37(b)(2)(A)(vi). Companion Health Servs., Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012). The same sanction is available "where a party fails to provide answers to

15

interrogatories or produce documents for inspection, or for failure of a party to attend its own deposition." Id. (citing Fed. R. Civ. P. 37(d)(3)).

As has been long recognized in this Circuit, "[t]here is nothing in the rule that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried." Damiani v. Rhode Island Hosp., 704 F.2d 12, 15 (1st Cir. 1983); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 25 (1st Cir. 2006)(upholding entry of default as initial sanction for party's repeated failure to produce discovery materials); HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988)(noting that the law is well established that "a trial judge need not first exhaust milder sanctions before resorting to dismissal"). Although default judgment is considered "drastic,'" it "'provides a useful remedy when a litigant is confronted by an obstructionist adversary" and the sanction "'plays a constructive role in maintaining the orderly and efficient administration of justice.'" Companion Health Servs., Inc. v. Kurtz, 675 F.3d at 84 (quoting Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011)(quotation omitted)).

Generally, District Courts have "broad discretion to manage discovery matters," Heidelberg Americas, Inc. v. Tokyo Kikai Seisakuscho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), because they are "familiar with the circumstances of the case and . . . in the

best position to evaluate the good faith and credibility of the parties." Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009)(quoting KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003)). The authority of the Court to "dismiss an action as a sanction for noncompliance with a discovery order is well established." Vallejo v. Santini-Padilla, 607 F.3d 1, 7-8 (1st Cir. 2010)(collecting cases and acknowledging the "array of litigation misconduct faced by district courts"). With respect to a party's failure to obey a court order, such disobedience "in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal."). Id. at 8 (quoting Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002)).

**IV. Discussion**

From the beginning of this litigation, Shapiro sought, and was accorded, the benefits generally conferred on a *pro se* litigant, including access to the Court's docket free of charge, in order to keep himself informed about the status of the case. In addition, every effort was made, and extraordinary patience and consideration was shown to Shapiro by the Magistrate Judge assigned to handle the discovery phase of this case.  Although, generally, some leniency for *pro se* litigants may be appropriate, see, e.g. Pomales v. Celurares Telefonica, Inc., 342 F.3d 44, 50 n. 4 (1st Cir. 2003), a litigant's *pro se* status does not "absolve him from compliance

with the Federal Rules of Civil Procedure." *F.D.I.C. v. Anchor Properties*, 13 F.3d 27, 31 (1st Cir. 1994). Failure to comply with court orders may result in dismissal in cases of extreme misconduct and/or where the *pro se* litigant has been explicitly warned that certain conduct may result in dismissal. *Pomales v. Celurares Telefonica, Inc.*, 342 F.3d at 50 n. 4 (citing *Cintron-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 526-27 (1st Cir. 2002)).  The Court notes at this juncture that, although Shapiro is not an attorney, he appears to have had the benefit of some legal education and he has repeatedly demonstrated that he is familiar with the Federal Rules of Civil Procedure. It has also been brought to the Court's attention that Shapiro has filed numerous *pro se* complaints in other courts. *See e.g.* *Shapiro v. Circuit Court of Virginia Beach*, Action No. 2:10cv460 (E.D.Va. March 1, 2011) (admonishing plaintiff that litigation is not a sport, noting that plaintiff had filed fourteen lawsuits in that court in two years, and advising that the court will consider imposing a system of pre-filing review for any future submissions by plaintiff).

In this litigation, there are numerous examples of troubling misconduct by Shapiro which warrant sanctions, including the dismissal of the case with prejudice:

First, Shapiro's continuing representation that he is a California resident is contradicted by the deposition testimony of

18

his father, who described in detail the process of forwarding litigation materials and other court filings received at his law firm to Shapiro at his Virginia address.

Second, Shapiro's refusal to provide an e-mail address for the asserted reason that he does not use one is inconsistent with Shapiro's own statements that he received notice of RWU's motions only by e-mail and the submitted evidence of communications between the parties via e-mail.

Third, Shapiro's statement that RWU's counsel did not confer with him prior to filing a motion for protective order related to Shapiro's student file is disputed by RWU without objection from Shapiro. Moreover, the interaction between Shapiro and RWU's counsel, which took place before the motion for protective order was filed, is described in detail, which lends it additional credibility.

Fourth, as the Magistrate Judge repeatedly pointed out to Shapiro, once Shapiro had been given free PACER access, he could no longer claim that he did not receive, or did not have access to, any court filings in this case. Nevertheless, Shapiro based his inability to adhere to discovery deadlines on not having received a copy of the pretrial order. In addition, he filed a petition for writ with the First Circuit Court of Appeals to have various filings set aside on RWU's alleged failure to serve or forward such materials to him.

Fifth, Shapiro was specifically ordered to provide answers to RWU's interrogatories within twenty-one days of this Court's order dated May 24, 2012 (Docket # 104).   In disobedience of this specific order, Shapiro failed to provide responses.

Sixth, Shapiro failed to appear at a scheduled hearing on May 22, 2012.  Instead of advising the Court and RWU's counsel that he would be unable to attend, Shapiro filed a motion to set aside RWU's notice of the motion and to reschedule the hearing, which was received after the hearing had concluded.

Seventh, Shapiro failed to obey an order of this Court (Docket # 108) to produce documents in response to RWU's first supplemental request. The documents were due to be produced by June 21, 2012.

Eighth, Shapiro failed to appear at his own deposition, which had been re-scheduled to accommodate him. Rescheduling became necessary when Shapiro filed an "Emergency" Motion only three days before the scheduled date of his deposition.  During a hearing on his "Emergency" Motion, in which Shapiro participated by telephone, he disclosed to the Magistrate Judge that he would be unable to attend his deposition on June 1, 2012 and that he had canceled an already purchased ticket for a flight by which he could have traveled to Rhode Island a few days later. At a hearing on Shapiro's "Emergency" Motion on May 31, 2012, the Magistrate Judge gave Shapiro an opportunity to select among several dates for his deposition, an opportunity which Shapiro refused.  At that time,

the Magistrate Judge re-scheduled Shapiro's deposition and explicitly warned him that not attending his own deposition would result in severe consequences. Following the hearing, the Magistrate Judge issued a written order (Docket # 108) which stated, in bold lettering, that "**Plaintiff is ordered to appear for his deposition at 10:00 a.m. on Thursday, June 21, 2012, at the location stated in the Notice of Deposition.**"  The order also included a footnote which advised Shapiro that "if he fails to appear for this deposition he is subject to being sanctioned and that sanction could include dismissal of this action." The footnote cited Fed. R. Civ. P. 37(b),(d) and case law regarding the possibility of dismissal as a sanction for a plaintiff's failure to attend his own deposition.

Finally, the Court notes that Shapiro has not objected to any of the four motions by RWU seeking sanctions and/or dismissal of the case and, although Shapiro has appealed from the Magistrate Judge's order compelling him to attend his own deposition on June 21, 2012, he did not file a motion for a protective order, nor did he seek a stay of such proceedings. As such, RWU's motions for sanctions and/or to dismiss the case are essentially unopposed and they may be granted on that basis as well.

In sum, in view of Shapiro's continuous and flagrant misconduct in the course of this litigation, including making misrepresentations to this Court, refusing to provide discovery

21

materials, and outright disobedience with respect to at least three separate orders of this Court (Docket ## 104, 108, and 114), the Court concludes that dismissal of the case is an appropriate measure.

### Conclusion

For the reasons stated above, RWU's motions (Docket ## 112, 126, 127, and 132) are GRANTED and the case is DISMISSED WITH PREJUDICE pursuant to Rules 37(b)(2)(A), 37(d)(1)(A), and 41(b) of the Federal Rules of Civil Procedure.


SO ORDERED.

<u>/s/ Mary M. Lisi</u>

Mary M. Lisi

Chief United States District Judge
August 17, 2012